CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
AUG 0 4 2005
JOHN F. CORCORAN, CLERK
BY: HMcDonald
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ERNEST W. JOYNER, ) | |
| Plaintiff, ) | Civil Action No. 7:03cv00479 |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| DEPARTMENT OF CORRECTIONS, ) | |
| et al. ) | By: Hon. Jackson L. Kiser |
| Defendants. ) | Senior United States District Judge |

Plaintiff Ernest W. Joyner has filed this action pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Joyner, proceeding pro se, is a District of Columbia inmate who was previously housed in Virginia at Red Onion State Prison ("ROSP") and Sussex II State Prison. Although plaintiff originally raised numerous claims against more than thirty defendants, the only claims which remain are plaintiff's claim of excessive force and denial of equal protection against Defendant Rowlette.

Defendant Rowlette has filed a motion for summary judgement as to the remaining claims. The court notified Joyner of the dispositive motion filed by the defendant, as required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and warned plaintiff that judgment may be entered against him or the case dismissed if he failed to submit adequate materials within the time permitted for response. As more than twenty days have elapsed and plaintiff has failed to make any response, the underlying motion for summary judgment is ripe for disposition.

After a thorough review of the record, I am convinced that there exists no issue of material fact and that Defendant Rowlette is entitled to judgment as a matter of law as to all remaining claims.

## I. Allegations

Joyner claims that on March 23, 1999 the defendant violated his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff alleges that on that day an unidentified guard shot at plaintiff and that defendant thereafter forced him and other inmates to lay in the mud for approximately fifty minutes.

Additionally, Joyner claims that during his period of incarceration at ROSP, defendant "developed racial degradation tactics towards the plaintiff." Specifically, plaintiff claims that defendant forced African American inmates to crawl to their cells and grabbed them by the back of their shirts while they were lying face down. Although plaintiff does not specify in what context the alleged conduct occurred, it appears from the record that such incidents, which if occurring at all, were related to security responses to disruptive inmate behavior.

## II. Analysis

Upon motion for summary judgment, the court must view the facts and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. Ross v. Communications Satellite Corp., 759 F.2d 355 (4th Cir. 1985). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 47 U.S. 242 (1986).

When a motion for summary judgment is made and properly supported by affidavits,

depositions, or answers to interrogatories, the adverse party may not rest on the mere allegations or denials of the adverse party's pleadings. Instead, the adverse party must respond by affidavits or otherwise and present specific facts showing that there is a genuine issue of disputed fact for trial. Fed. R. Civ. P. 56(e). If the adverse party fails to show a genuine issue of material fact, summary judgment, if appropriate, may be entered against the adverse party.

### A. Excessive Force

Joyner alleges that he was subjected to excessive force in violation of his Eighth Amendment right to be free from cruel and unusual punishment. The Eighth Amendment protects individuals against excessive prison sentences, as well as inhumane treatment and excessive force while imprisoned. See U.S. Const. amend. VIII. To establish an Eighth Amendment excessive force claim against a prison official, an inmate must satisfy a two-prong standard comprised of both an objective inquiry (whether the harm plaintiff suffered was sufficiently serious enough to amount to a constitutional violation) and a subjective inquiry (whether the defendant acted with a sufficiently culpable state of mind). Williams v. Benjamin, 77 F.3d 756, 761 (1996).

The subjective component of an excessive force claim requires an inmate to demonstrate that the force used by an institutional official, "inflicted unnecessary and wanton pain and suffering." Hudson v. McMillian, 503 U.S. 1, 7 (1992). In evaluating such a claim, "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Id. (quoting

Whitley v. Albers, 475 U.S. 312, 32-21 (1986)). The Supreme Court and the Fourth Circuit have set out the following factors to consider in determining whether a prison official acted maliciously and sadistically: "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Hudson, 503 U.S. at 7 (1992) (quotations omitted); Williams, 77 F.3d at 762. Also, the inmate must prove the correction official's actions were "'objectively harmful enough' to offend 'contemporary standards of decency.'". Stanley v. Hejirika, 134 F.2d 629, 634 (4th Cir. 1998) (quoting Hudson, 503 U.S. at 8). Although there is no requirement that an inmate suffer "serious" or "significant" pain or injury to demonstrate that a malicious or sadistic use of force was employed, he must allege "more than a de minimis pain or injury." Norman v. Taylor, 25 F.3d 1259, 1263 n. 4 (4th Cir. 1994). "[A]bsent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis." Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998). However, a de minimis physical injury may amount to an Eighth Amendment violation if the force used was of the sort "repugnant to the conscience of mankind." In Norman v. Taylor, the Fourth Circuit stated:

> We recognize that there may be highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in an impermissible infliction of pain. In these circumstances, we believe that either the force used will be "of a sort 'repugnant to the conscience of mankind,'" and thus expressly outside the de minimis force exception, or the pain itself will be such that it can properly be said to constitute

-4-

more than de minimis injury.

25 F.3d at 1263, n. 4 (citations omitted).

According to Joyner, on March 23, 1999 some unidentified guard fired shots at or towards the plaintiff and the defendant then forced the plaintiff to lie in cold mud for approximately fifty minutes. However, he has failed to present any allegations of actual or long term injury. Instead, Joyner claims only that he suffered "mental distress." Accordingly, I find that Joyner has not suffered anything more than de minimis pain or injury and, as such, this does not amount to a constitutional violation.

Furthermore, even if plaintiff had suffered something more than de minimis injury, such injury would not have been the result of action repugnant to the conscience of mankind. To meet the subjective component of an excessive force claim, Joyner must demonstrate that the force used against him was not applied in a good faith effort to restore order, but rather with malice as a punitive measure in an effort to cause him harm. See Whitley, 475 U.S. at 320-21. Prison officials are afforded some latitude in disciplining inmates, particularly in situations where the questionable action follows an inmate disruption. Id. It is clear that on the day in question, there was some inmate disruption in the prison yard and that two warning shots were fired into the air. See Memorandum Opinion, Document No. 27. In his affidavit, Rowlette explains that prison security policy requires that when an inmate behaves in any manner which poses a security threat, a security intervention is required. First a verbal warning is issued, then a shot is fired in the air, and all inmates on the prison yard are required to lay flat on the ground. This standard response helps to ensure the safety of prison staff, correctional officers, and non-disruptive inmates. Once the inmates are prone, officers remove the disruptive inmates first and then all

-5-

Case 7:03-cv-00479-JLK   Document 38   Filed 08/04/05   Page 5 of 8   Pageid#: 162

other inmates are individually approached, restrained, and returned to their cells. As inmates are individually removed from the yard following a disruption, it is clear that depending on the actual number of inmates, the entire process may take some time. However, Joyner has not presented any evidence to suggest that his removal from the yard was purposefully delayed or that the removal process itself is designed to cause harm. As such, I find that Johnson has failed to allege sufficient facts to satisfy the objective component of an excessive force claim.

As noted previously, Johnson did not suffer any serious or significant harm as a result of the March 23, 1999 incident. Furthermore, it is clear that the defendant followed security motivated procedures in removing inmates from the yard following a security threat. As such I find that Joyner has not presented any question of material fact as to his claim of excessive force. Additionally, I find that defendant is entitled to judgment as a matter of law as to this issue and will grant his motion for summary judgment.

Furthermore, to the extent that Joyner alleges that the defendant used excessive force in grabbing African Americans inmates by the back of their shirts when they lay in a prone position and by forcing them to crawl to their cells, it too must fail. As a threshold matter, plaintiff has not alleged any facts to establish that defendant actually grabbed plaintiff by the back of his shirt or forced him to crawl to his cell nor has he alleged any actual injury as a result of the conduct of which he complains. Additionally, it is uncontested that the disruptive inmates are removed from the yard first and are, depending on location within the yard and among other inmates, required to crawl towards the guards to allow for their safe restraint. Furthermore, as all inmates are then restrained by wrist and leg shackles, rising from the prone position may require assistance. Therefore, it is not unreasonable for guards to grab inmate shirts in helping them to their feet.

Based on the foregoing, I find that plaintiff has suffered no injury as a result of the action of which he complains and that the defendant's actions were reasonable in light of the prison security intervention policy. Accordingly, I find that defendant is entitled to judgment as a matter of law as to this issue and will grant his motion for summary judgment.

### B. Equal Protection

To the extent that Joyner's claims that the defendant specifically targeted him as an African American during the alleged use of excessive force can be construed as an equal protections claim, it too fails. In order to prevail on an equal protection claim, a plaintiff must first demonstrate that he or she has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination; once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny. See Morrison v. Garraghty, 239 F.3d 648 (4th Cir. 2001).

As noted above, the record clearly indicates that during a security threat all inmates are required to lay in a prone position until they can be individually restrained and removed from the yard. Additionally, it is uncontested that the disruptive inmates are removed first and are, depending on location within the yard and among other inmates, required to crawl towards the guards to allow for their safe restraint, all inmates are restrained by wrist and leg shackles, and that guards may need to grab inmate shirts to assist them to their feet. Although Joyner may feel that as an African American he has been targeted during security interventions, it is clear that all inmates are required to lay prone following shots being fired and as all inmates are restrained by

wrist and leg shackles guards may be reasonable assisted to them to their feet by grabbing the inmates' shirts. Furthermore, Joyner has presented no evidence that any inmates, other than those who were disruptive, were made to crawl towards the guards before the restraints were applied and the inmate returned to his cell. In that Joyner has failed to allege any facts which demonstrate that he has been treated differently than any other prisoner, he has failed to meet even the first prong of an equal protections claim. Accordingly, I will grant defendant's motion for summary judgment as to this claim.

### III. Conclusion

Based on the foregoing, I find that Joyner has failed to present any issues of material fact. Furthermore, I find that Joyner has failed prove the objective and subjective elements of an excessive force claim or that he was treated differently from inmates with whom he was similarly situated. Accordingly, defendant is entitled to judgment as a matter of law as to all claims raised against him and will hereby grant his motion for summary judgment in this matter.

The Clerk of the Court is directed to send a certified copy of this Order to plaintiff.

ENTER: This 4th of August, 2005.

Senior U.S. District Judge